## HINES v. UNITED STATES.

### No. 6072.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1937.

Rehearing Denied Aug. 6, 1937.

Wyatt B. Angelo and Joseph Fitzgerald, both of Chicago, Ill., for appellant.

Robert H. Jackson, Asst. Atty. Gen., Sewall Key and E. E. Angevine, Sp. Assts. to the Atty. Gen., Michael L. Igoe, U. S. Atty., of Chicago, Ill., and Alexander Tucker, for the United States.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

In this case the District Court found that in 1927 appellant had received a dividend in kind of an undivided interest in real property from the Edward Hines Yellow Pine Trustees, hereinafter referred to as the Company, and that she was not entitled, therefore, to recover the tax which she had previously paid on that item, amounting to $6,487.63. The judgment in effect followed the findings and from it this appeal is prosecuted.

The facts were stipulated and are substantially as follows: The taxpayer filed her income tax return for the calendar year 1927. Among the items of income reported was $45,954.06 representing dividends stated to have been received from Edward Hines, agent for the certificate holders of the Company, on 901.6 certificates of beneficial interest valued at $51 each.

Appellant received this item under the following circumstances: On May 2, 1927, the Company addressed and delivered to each of the certificate holders the following letter (omitting caption and signatures):

"We are this day making a partial distribution to you of undivided interests in the following property: * * * (descriptions of real property).

"Because of the fractional interest of most of the holders of the certificates of beneficial interest, and in order to avoid a multiplicity of deeds, we have requested Mr. Edward Hines to act for you making this distribution. We will convey the property to Mr. Hines subject to the $292,000.00 mortgage, and request him to sell the same

and to distribute the net proceeds among you in the proportion of your respective interests. Upon the conveyance of this property to Mr. Hines, subject to the said mortgage, and for the nominal sum of one dollar, Mr. Hines becomes the agent of you, and each of you, and all further correspondence in relation to this property will come from him and not from us as he holds his title, not for himself individually, except to the extent that he is himself a holder of certificate of beneficial interest, but for you, and in the proportions of your interest."

On May 3, 1937, the Company by warranty deed conveyed the property to Mr. Hines subject to a mortgage of the Continental and Commercial Trust and Savings Bank, of Illinois, for $292,000, and also to certain oil reservations, and uses which are not here material. The consideration was stated to be one dollar and there was nothing in the deed with respect to the grantee acting as agent for the certificate holders, or that he should sell the property and divide the proceeds.

On May 4, 1927, Mr. Hines sold the property to certain parties, other than this taxpayer, for $445,000, of which $45,000 was paid to Mr. Hines in cash. The balance was evidenced by a series of fifteen promissory notes.

On January 23, 1928, the Trustees addressed and delivered to the certificate holders the following letter:

"To the Holders of Certificates of Beneficial Interest in the Edward Hines Yellow Pine Trustees.

"As some of the holders of Certificates of Beneficial Interest in the Edward Hines Yellow Pine Trustees, and other Hines organizations have asked whether any of the distributions during the year 1927 were return of capital assets, we have to say that all distributions of all the Hines organizations during the year 1927 were from earnings or accumulations subsequent to March 1, 1913, and therefore not tax free distributions.

"In this connection may we call your attention to the distribution to you by the Edward Hines Yellow Pine Trustees on May 2, 1927, of the property in * * * In order to make this distribution this property was transferred to your Agent, Mr. Edward Hines, subject to a mortgage for $292,000.00 and a payment by Mr. Hines of one dollar. Mr. Hines very shortly

thereafter sold this property of yours for $445,000.00. This sale, in our opinion, fixed the value of the property as of May 2, 1927, at $445,000.00 and the total amount distributed to the holders of certificates of beneficial interest was $153,000.00 (disregarding the one dollar paid by Mr. Hines). As there are three thousand shares in the certificates of beneficial interest, the distribution per share was $51.00 which should be reported by you as income from dividends during the year 1927."

During the calendar year of 1927, appellant received $15 in cash for each of her certificates out of the $51 profit. The balance of $36 on each of her certificates was in the form of notes payable to Edward Hines, and in the possession of the Continental Bank for the account of Mr. Hines until collected. Her accounts were kept and returns made on the cash receipts and disbursements basis. She duly filed her claim for refund based on the proposition that she had erroneously reported the amount of $51 received by her for each certificate, whereas she should have reported only the amount of $15 for each certificate, being the amount of cash which she received in 1927. The claim was rejected by the Commissioner, and this suit was timely begun on May 3, 1933.

The only question here presented is whether under the facts stated the taxpayer, in 1927, received a dividend in kind of an undivided interest in the real property herein involved. That question must be answered in the affirmative.

■■ The authorities relied upon by both parties are not at variance. They differ only as to the facts. From these decisions it can not be denied that a cash dividend can not be charged as income to the taxpayer until he has received it. Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216. It is equally true that a dividend in kind can not be charged as income to the taxpayer until he separately, or with those jointly interested with him, receives it, or the unlimited control of it. United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180. The solution of the problem then resolves itself into the answers to two questions: (1) What did appellant receive from the Trustees, and (2) when did she receive it? It is obvious that she received no cash, or promise to pay, from the Company. The only thing of which it rid itself was the title to the land, which constituted no part of its capital.

The transfer was by warranty deed which contained no reservation of any kind pertinent to this controversy. Edward Hines was named as grantee. He was in no manner referred to in the deed as agent or trustee, nor were the certificate holders, or any of them referred to in any manner. The record discloses, however, that Edward Hines was a certificate holder, and had received copies of the letters from the Company which have been hereinbefore referred to. He therefore knew that the entire property had been deeded to him as agent for all the certificate holders jointly. This he never denied, and he fully carried out the suggestions made in the first letter.

Of course, the Trustees could not effectively appoint an agent for the certificate holders without their consent or approval, and the record does not disclose that the taxpayer delegated such power prior to the appointment. All of the subsequent circumstances, however, fully confirm the conclusion that she afterwards consented to and approved that appointment, and was bound by it as effectively as if she had authorized it. She made no objections at any time and afterwards participated in the distribution.

We find nothing in the first letter to indicate that the Company intended to limit or condition the declaration of the dividend in any manner. It merely states that the Company would request Mr. Hines to sell the property and distribute the proceeds and further adds that future correspondence with respect to the transaction would come from Mr. Hines as their agent and not from the Company, "as he holds his title, not for himself individually, except to the extent that he is himself a holder of certificate of beneficial interest, but for you, and in the proportions of your interests."

Under these circumstances we have no doubt, after the deed was delivered, that these certificate holders jointly had complete dominion and control over the property regardless of anything contained in the letters. They could have refused to accept Mr. Hines, as their agent, and could have held the land as tenants in common if they so desired. If appellant alone had objected to the agent or to the sale of the property she might have frustrated the suggested sale by filing a suit for partition, because the suggestions and requests in the first letter constituted no limitations what-

ever upon the declaration of the dividend in kind. They were carried out by agent of the certificate holders merely because they assented to the suggestion and desired that it be done.

We are convinced that the dividend was of real property and that it was received by the certificate holders when the deed was executed and delivered to Edward Hines, their agent. This clearly appears to be the intention of the Company, as expressed in the first letter, and as supported by the instructions in the second letter with respect to reporting the dividend as income of the year 1927.

Judgment affirmed.